USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 10-26-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PERSONAL BEASTIES GROUP LLC,

        Plaintiff,

  - against -

NIKE, INC.,

        Defendant.

18-cv-516 (JGK)

OPINION AND ORDER

---

JOHN G. KOELTL, District Judge:

Personal Beasties Group LLC, the plaintiff and owner of U.S. Patent No. 6,769,915 (the "'915 Patent"), alleges that Nike, Inc., the defendant, infringed its '915 Patent. The defendant has moved to dismiss the plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that the '915 Patent is ineligible for patent protection under 35 U.S.C. § 101. For the reasons explained below, the defendant's motion is **granted**.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely

to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Mercator Corp. v. Windhorst, 159 F. Supp. 3d 463, 466-67 (S.D.N.Y. 2016).

II.

The '915 Patent, entitled "Interactive System for Personal Life Patterns," was issued to the plaintiff in August 2004. '915 Patent, at [45, 54, 73]. It contains twenty-two claims, comprised of fifteen system claims and seven dependent method claims. Id. col. 7 l. 34 - col. 10 l. 9. The abstract describes the invention as follows:

> A user-interactive behavioral modification system includes a base module with an input for a first set of personal data. A feedback interface provides feedback in response to the first data set. A main database maintains the first data set. A main controller generates a main output signal for causing feedback to the user according to a predetermined set of behavioral pattern rules. The feedback interface receives a feedback input signal and includes a display for displaying an appearance of a character based on the first set of personal data and in response to the received input signal. The appearance of the character is controlled to encourage the user to perform desired behavioral responses according to the behavioral pattern rules.

Id. at [57]. In other words, a user inputs information - such as behavioral patterns, goals, and a desired rate of change - into a handheld device. That information is maintained in a "main database." A "main controller" then generates a signal to send feedback to the user according to a set of predetermined behavioral rules. The feedback manifests as a cartoon-like character who, based upon the user's behavior and the predetermined rules, responds accordingly. For example, the character appears in an encouraging pose when the user engages

3

in behavior in line with the user's goals. See id. fig. 7, 36a. The '915 Patent application states that this system and method is unlike other computer-aided life-management tools because it "more deeply engag[es] user interaction"; while other tools are passive, depending upon a user's commitment to interact with them, the claimed invention actively interacts with the user. Id. col. 1 ll. 20-38. Put simply, the '915 Patent claims an invention that collects information, analyzes that information, and then displays the result of the analysis by using a character. The plaintiff alleges that the defendant infringed this patent.

The defendant moves to dismiss the complaint, arguing that the '915 Patent is ineligible for patent protection under 35 U.S.C. § 101 as an abstract idea.

### III.

#### A.

Before conducting a 35 U.S.C. § 101 analysis, it is necessary to determine the scope of the '915 Patent claims to be assessed. The defendant argues that Claim 1[1] is representative of

---

[1] Claim 1 provides:
A user-interactive behavioral modification system for modifying undesired behavioral patterns comprising:
    an input means for inputting a first set of personal data by a user into a base module; the base module further including at least one feedback interface means for providing a feedback to the user in response to the first set of personal data;

4

all twenty-two claims. The plaintiff responds that the dependent claims add additional, patentably distinct limitations. Particularly, the plaintiff points to Claims 7, 10, and 12.[2]

Addressing each asserted claim in a § 101 analysis is unnecessary when the claims are "substantially similar and linked to the same abstract idea." Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted). Such is the case here. Claims 7 and 10 add only the existence of an alert system and the selection of a predetermined set of rules, respectively. These additions are intimately linked to

---

a main database component separated from the base module operative to maintain at least the first set of personal data entered into the base module;

a main controller unit operatively coupled to at least the main database component for generating a main output signal for causing feedback to the user according to a predetermined set of behavioral pattern rules adapted for the user;

a feedback signal is communicated to the feedback interface; the feedback interface means further includes a display unit for displaying an appearance of a character having different appearances based on the first set of personal data and in response to the input signal;

whereby the appearance of the character is controlled to encourage the user to perform desired behavioral responses according to the behavioral pattern rules.

'915 Patent col. 7 ll. 34-56.

[2] Claim 7 provides, "The system of claim 1 wherein the feedback interface means further includes an alert system for alerting the user to an occurrence of an undesired behavioral pattern." '915 Patent col. 8 ll. 11-13.

Claim 10 provides, "The system of claim 1 wherein the predetermined set of behavioral pattern rules is selected to assist the user in enforcing occurrences of desired behaviors." Id. col. 8 ll. 21-23.

Claim 12 is a method claim that substantively mirrors Claim 1. See id. col. 8 ll. 27-50.

the abstract idea of modifying undesirable behavioral patterns in the manner described in Claim 1. Claim 12 is a method claim that substantively replicates Claim 1. Where, as here, the system and method claims "are grounded by the same meaningful limitations," they "will generally rise and fall together." Accenture Glob. Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1341 (Fed. Cir. 2013); see Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2360 (2014) (refusing to distinguish between "method claims recit[ing] the abstract idea implemented on a generic computer" and "system claims recit[ing] a handful of generic computer components configured to implement the same idea"). Thus, none of the claims that the plaintiff identified are patently distinctive. Nor are the other dependent claims not specifically mentioned by the plaintiff. Therefore, it is appropriate to proceed with the § 101 analysis treating Claim 1 as representative of all the '915 Patent's claims.

B.

Patent eligibility, a question of law often involving subsidiary factual questions, can be decided on a motion to dismiss "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."[3] Aatrix Software, Inc. v. Green Shades Software, Inc., 882

---

[3] The plaintiff argues that Claim 1 of the '915 Patent carries a presumption of validity under 35 U.S.C. § 282(a). Therefore, the plaintiff asserts, the defendant bears the burden of proving the Patent's invalidity by

6

F.3d 1121, 1125, 1128 (Fed. Cir. 2018); see Cleveland Clinic Found. v. True Health Diagnostics LLC, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases affirming § 101 rejections at the motion to dismiss stage), cert. denied, 138 S. Ct. 2621 (2018); Quantum Stream Inc. v. Charter Commc'ns, Inc., 309 F. Supp. 3d 171, 189 (S.D.N.Y. 2018) (dismissing the plaintiff's complaint because the three patents allegedly infringed were patent ineligible under § 101). Under 35 U.S.C. § 101, anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." But patent protection does not extend to "[l]aws of nature, natural phenomena, and abstract ideas." Alice, 134 S. Ct. at 2354.

---

clear and convincing evidence. See Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 95 (2011). The defendant contends that the presumption of validity does not apply to § 101 inquiries. See Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring) ("Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned - much less applied - any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus." (citation omitted)). Cases in this District disagree on whether to apply a presumption of validity in a § 101 dispute. Compare Gust, Inc. v. Alphacap Ventures, LLC, No. 15cv6192, 2017 WL 2875642, at *4 n.4 (S.D.N.Y. July 6, 2017) ("There is no basis in the law to find that a presumption of eligibility attends the Section 101 inquiry."), with Kickstarter, Inc. v. Fan Funded, LLC, No. 11cv6909, 2015 WL 3947178, at *1 n.3 (S.D.N.Y. June 29, 2015) (stating, in the context of a § 101 inquiry, that "each claim contained in the [defendants' patent] is presumptively valid"), aff'd, 654 F. App'x 481 (Fed. Cir. 2016). The result reached in this case is the same whether or not Claim 1 is presumed valid, and therefore the Court does not need to resolve this issue.

The two-step test described by the Supreme Court in Alice guides the § 101 inquiry. First, a court must "determine whether the claim[] at issue [is] directed to one of those patent-ineligible concepts" noted above. Id. at 2355. In this "first-stage filter," the court looks at the character of the claim as a whole, evaluating its "basic thrust." Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016); Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1348 (Fed. Cir. 2016). But the court must avoid oversimplifying the claim because, at some level of abstraction, all inventions can be reduced to patent-ineligible concepts. See In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016).

If the claim at issue embodies a patent-ineligible concept, the court moves to Alice's second step, where the court considers the claim's elements "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Alice, 134 S. Ct. at 2355 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 78-79 (2012)). In this "more precis[e]" inquiry, the court searches for an "'inventive concept' in the application of the ineligible matter to which . . . the claim is directed." Elec. Power, 830 F.3d at 1353. An inventive concept exists when an "element or combination of elements . . . 'sufficient[ly] . . . ensure[s]

8

that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Alice, 134 S. Ct. at 2355 (final alteration in original) (quoting Mayo, 566 U.S. at 73).

1.

The defendant argues that Claim 1 boils down to a system for (1) collecting information, (2) analyzing information, and (3) providing feedback based on predetermined rules. As such, the defendant maintains, it is patent ineligible under Alice step one as an abstract idea. The plaintiff responds that Claim 1 is not a mere abstract idea because its limitations are directed toward helping users commit to improving their behavior. To distinguish its system from an abstract idea, the plaintiff specifically notes the system's use of a character who changes appearance based on the user's inputs and on the information subsequently collected and analyzed by the system. A cartoon character with a happy face will signify that goals are being met.

An invention that selects and then collects information, analyzes that information "by steps people go through in their minds[] or by mathematical algorithms," and then presents the results of the analysis, without more, is unpatentable as an abstract idea. Elec. Power, 830 F.3d at 1353-54; see Content Extraction, 776 F.3d at 1347 ("The concept of data collection,

9

recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions."). To be more than an abstract idea, the invention must contain a "particular assertedly inventive technology for performing those functions." Elec. Power, 830 F.3d at 1354. Merely "limiting [an abstract idea] to a particular field of use or technological environment" does not render it nonabstract. Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1366 (Fed. Cir. 2015).

The system described in Claim 1 follows exactly the unpatentable process described above: it collects, analyzes, and then displays information. That the system's limitations are directed to helping users improve their behavior does not render it nonabstract. The system's purpose of improving behavior merely influences the *type* of information that is used by the system. For example, a user might input – and the system might collect, analyze, and display – information related to smoking or weight loss. But limiting the information used by a system to a particular type does not make an abstract system any less abstract. Elec. Power, 830 F.3d at 1353.

Moreover, Claim 1's functions reflect those performed by a doctor or a coach – receiving information about a patient's or client's goals, observing and noting whether or not the patient or client behaves in furtherance of those goals, and then addressing the patient or client accordingly. Technological

inventions performing a series of steps that could be performed by humans are generally considered abstract ideas. See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1324 (Fed. Cir. 2016) (stating that certain claims were directed to an abstract idea because "[t]he series of steps covered by the asserted claims . . . could all be performed by humans without a computer"). The system in Claim 1 does nothing more than "implement an old practice in a new environment." See FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1094 (Fed. Cir. 2016).

Using a cartoon-like character "that engages with the user and helps encourage (or discourage) him or her [regarding] specific behaviors," Opp'n at 13, also does not make Claim 1 nonabstract. The character is a means to display the result of the system's data analysis. It thus does not fundamentally change Claim 1's abstract process. Moreover, the character does not constitute a "particular assertedly inventive technology" for displaying information. See Elec. Power, 830 F.3d at 1354. The character simply anthropomorphizes information; it is a substitute for displaying the words "good job," for instance. This substitution, which according to the plaintiff makes its invention interactive, does not pass muster under Alice's first step. Cf. Intellectual Ventures I LLC v. Capital One Fin. Corp., 850 F.3d 1332, 1339-40 (Fed. Cir. 2017) (holding to be abstract

11

an invention that created data structures that made compatible otherwise incompatible specialized computer language documents, and then displayed them in a way that allowed users to make modifications); Fitbit Inc. v. AliphCom, No. 16cv118, 2017 WL 819235, at *14 (N.D. Cal. Mar. 2, 2017) (characterizing as abstract the claimed improvement of displaying fitness-tracking data in a manner that "ensures that a user will receive the [data] at the time he will be able to view and comprehend it").

2.

As to Alice's second step, the defendant reiterates that Claim 1 is "directed to the general functions of collecting and analyzing data and issuing notifications," and adds that the components recited in the claim were well-known in the art and that the claim's elements are ordered in a conventional manner. Def.'s Mem. at 14-15. In response, the plaintiff again emphasizes its system's use of a character. By including a character that changes appearance to encourage or discourage the user according to the user's goals and behavior, the plaintiff claims to have improved the technological process underlying other, more passive computer-based life-management tools. The plaintiff therefore contends that the '915 Patent contains a concept sufficiently inventive to render it patent eligible.

With respect to improving an existing technological practice, the plaintiff asserts that its invention is analogous

an invention that created data structures that made compatible otherwise incompatible specialized computer language documents, and then displayed them in a way that allowed users to make modifications); Fitbit Inc. v. AliphCom, No. 16cv118, 2017 WL 819235, at *14 (N.D. Cal. Mar. 2, 2017) (characterizing as abstract the claimed improvement of displaying fitness-tracking data in a manner that "ensures that a user will receive the [data] at the time he will be able to view and comprehend it").

2.

As to Alice's second step, the defendant reiterates that Claim 1 is "directed to the general functions of collecting and analyzing data and issuing notifications," and adds that the components recited in the claim were well-known in the art and that the claim's elements are ordered in a conventional manner. Def.'s Mem. at 14-15. In response, the plaintiff again emphasizes its system's use of a character. By including a character that changes appearance to encourage or discourage the user according to the user's goals and behavior, the plaintiff claims to have improved the technological process underlying other, more passive computer-based life-management tools. The plaintiff therefore contends that the '915 Patent contains a concept sufficiently inventive to render it patent eligible.

With respect to improving an existing technological practice, the plaintiff asserts that its invention is analogous

to the invention found patentable in McRO, Inc. v. Bandai Namco Games America Inc., 837 F.3d 1299 (Fed. Cir. 2016). The invention at issue in McRO was directed to a specific improvement in computer animation - it synchronized animated facial expressions and mouth movements in a manner that differed from the way in which human animators accomplished the same task. Id. at 1303-06. Using a combined order of specific rules, the invention automated via computer an animation practice previously "driven by [animators'] subjective determinations rather than specific, limited mathematical rules." Id. at 1314. The McRO invention thus did not transpose an old practice into a new environment, but used claimed rules to improve an existing technological process. Id.

In this case, using a character to display information plainly does not constitute a specific improvement to an existing technological process. The process of collecting, analyzing, and then displaying information is unchanged. Further, the character does not improve upon the display step; a coach, for example, would similarly encourage or discourage a client according to the client's goals and behavior. The plaintiff cannot claim a system for modifying behavior that differs from the way in which humans have carried out the task. McRO is thus distinguishable from this case.

13

Moreover, although "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional [elements]," e.g., Bascom, 827 F.3d at 1350, Claim 1's abstract elements are ordered in a generic and conventional pattern – a user inputs information, the system collects and analyzes other relevant information, and then the system displays through a character the result of its analysis. See Fitbit, 2017 WL 819235 at *17 (stating that certain claims were generically arranged because they "follow[ed] a conventional order of how data is usually analyzed: data is first received, then processed, then compared against a condition, and the notification is triggered when the condition is met"). In addition, Claim 1 recites only generic computer parts used to carry out this process. See Alice, 134 S. Ct. at 2357 (holding that "generic computer implementation[] fail[ed] to transform [an] abstract idea into a patent-eligible invention").

In sum, the '915 Patent contains no inventive concept. Its combination of elements does not "ensure that the patent in practice amounts to significantly more than" its underlying abstract idea. See id. at 2355. Because the '915 Patent fails both steps of Alice's eligibility test, it is patent ineligible under 35 U.S.C. § 101.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendant's motion to dismiss the plaintiff's complaint is **granted**. The plaintiff's complaint is therefore dismissed **with prejudice**.

SO ORDERED.

Dated:   New York, New York
         October 25, 2018

_____
John G. Koeltl
United States District Judge